IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| RAMOS SANDERS, #S-02150, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 15-cv-00142-SMY |
| ) | |
| MEARL J. JUSTICE,[1] ) | |
| RICHARD WATSON, ) | |
| PHILLIP McLAURIN, ) | |
| THOMAS T. TRICE, ) | |
| OFFICER LEVI BRIDGES, ) | |
| and CAMRON REID, ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM & ORDER**

**YANDLE, District Judge:**

Plaintiff Ramos Sanders, an inmate who is currently incarcerated at Menard Correctional Center ("Menard"), brings this action pursuant to 42 U.S.C. § 1983 against six jail officials in St. Clair County, Illinois (Doc. 1). In the complaint, Plaintiff claims that these officials subjected him to unconstitutional conditions of confinement from 2011 until 2013 (Doc. 1, pp. 7-9). He now seeks monetary damages against them (Doc. 1, p. 10).

**Merits Review Pursuant to 28 U.S.C. § 1915**

This case is now before the Court for a preliminary review of the complaint pursuant to 28 U.S.C. § 1915A. Under Section 1915A, the Court is required to promptly screen prisoner complaints to filter out nonmeritorious claims. 28 U.S.C. § 1915A(a). The Court is required to dismiss any portion of the complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or asks for money damages from a defendant who by law is

---

[1] The correct spelling of this defendant's name is Mearl "Justus." The Clerk shall be directed to correct the spelling of this party's name on the docket sheet in CM/ECF.

immune from such relief.  28 U.S.C. § 1915A(b).  The complaint survives threshold review under this standard.

### The Complaint

According to the complaint, Plaintiff was housed at St. Clair County Jail ("Jail") for two years (Doc. 1, pp. 7-9).  He was initially detained there for thirteen months between December 24, 2011, and January 24, 2013 (Doc. 1, p. 8).  Plaintiff returned to the Jail in 2013[2] (Doc. 1, p. 7).  Plaintiff claims that he was subjected to deplorable conditions at all times.

According to the complaint, Plaintiff was housed at the Jail for thirteen months following his arrest on December 24, 2011 (Doc. 1, p. 8).  During that time, he was deprived of basic human necessities, such as clean living conditions, a nutritionally adequate diet, adequate hygiene supplies, and ample exercise opportunities.  The food was prepared in unsanitary conditions, allowing for contamination (Doc. 1, p. 9).  Cleaning supplies were denied, and two of Plaintiff's cellmates in his four-person cell contracted scabies.[3]  Plaintiff was also denied access to exercise opportunities outside of his cell for two years because the gym was used to house inmates and a Jail policy prohibited exercise anywhere else.  Sergeant Camron Reid and Officer Levi Bridges were allegedly responsible for maintaining safe and sanitary conditions at the Jail during this time period, and they failed to respond to Plaintiff's complaints.

Plaintiff returned to the Jail at some point in 2013.  During his second period of confinement there, Plaintiff contracted a bacterial stomach infection that resulted from the regular consumption of food that was contaminated with rat feces.  For three months,

---

[2] The complaint does not indicate when Plaintiff's second period of confinement at the Jail began or ended.  If Plaintiff was housed at the Jail for two years, as the complaint alleges, then his confinement at the Jail would have been almost continuous, given the fact that it began on December 24, 2011.

[3] Plaintiff does not allege that he contracted scabies.

Plaintiff endured "extreme stomach pain, diarrhea, frequent bowel movements, upset stomach, vomitting (sic), cold sweats, and weight loss" (Doc. 1, p. 7).

He submitted sick call slips for a month, but was not scheduled for an appointment with a doctor. When he complained to a nurse, she met with him immediately. Together, they discussed the possibility of food contamination after reviewing Plaintiff's symptoms and discovering his fifty-five pound weight loss. The nurse indicated that Plaintiff's weight would be checked twice each week, and he would be scheduled for an appointment with Doctor Larson.

Another two months passed before Plaintiff met with Doctor Larson. He promptly ran blood tests and diagnosed Plaintiff with a bacterial stomach infection (Doc. 1, pp. 7-8). Plaintiff was admitted to the Jail's medical unit, where he remained for two weeks while he was treated with three types of antibiotics. Plaintiff took the antibiotics for thirty days.[4]

Plaintiff attributes this bacterial infection to unsanitary conditions in the Jail's kitchen. He sues Sheriff Mearl Justus, Sheriff Richard Watson, Superintendent Phillip McLaurin, and Captain Thomas Trice for knowingly failing to train and supervise the Jail's kitchen staff in safe food preparation and sanitary kitchen conditions.

## Discussion

After carefully reviewing the allegations, the Court finds that the complaint articulates the following viable claims:

> **Count 1:** Defendants Bridges and Reid subjected Plaintiff to unconstitutional conditions of confinement at the Jail by depriving him of clean living conditions, a nutritionally adequate diet, adequate hygiene supplies, and ample exercise opportunities from December 24, 2011, until January 24, 2013;

---

[4] Plaintiff has not named the Jail's nurse or doctor as a defendant in this action, based on allegations of inadequate medical care or any other theory of liability.

> **Count 2:** Defendants Justus, Watson, McLaurin, and Trice, while acting in their official capacities, subjected Plaintiff to unconstitutional conditions of confinement at the Jail by failing to train and supervise the Jail's kitchen staff as it relates to safe food preparation and sanitary kitchen conditions.

The applicable legal standard for these claims depends on Plaintiff's status as a pretrial detainee or inmate while he was housed at the Jail.[5] The Due Process Clause of the Fourteenth Amendment governs claims of pretrial detainees, while the Eighth Amendment applies to claims of inmates. *See Rice ex rel. Rice v. Corr. Med. Servs.*, 675 F.3d 650, 664 (7th Cir. 2012); *Forest v. Prine*, 620 F.3d 739, 744-45 (7th Cir. 2010); *Klebanowski v. Sheahan*, 540 F.3d 633, 637 (7th Cir. 2008). Regardless, the Seventh Circuit has made it clear that Eighth Amendment and Fourteenth Amendment case law can be used interchangeably in this context. *Id.*

Claims that relate to the conditions of confinement generally fall under the "cruel and unusual punishment" clause of the Eighth Amendment. All Eighth Amendment claims have an objective and a subjective component. *McNeil v. Lane,* 16 F.3d 123, 124 (7th Cir. 1994); *see also Wilson v. Seiter,* 501 U.S. 294, 302 (1991). The objective analysis examines whether the conditions of confinement exceeded contemporary bounds of decency of a mature civilized society. *Id*. The conditions must result in unquestioned and serious deprivations of basic human needs or deprive inmates of the minimal civilized measure of life's necessities. *Jamison-Bey v. Thieret*, 867 F.2d 1046, 1048 (7th Cir. 1989); *Meriwether v. Faulkner*, 821 F.2d 408, 416 (7th Cir. 1987).

However, not all prison conditions trigger Eighth Amendment scrutiny—only deprivations of basic human needs like food, medical care, sanitation and physical safety.

---

[5] A less stringent standard applies to arrestees. In that context, "the Fourth Amendment governs the period of confinement between arrest without a warrant and the [probable cause determination]," and the Seventh Circuit has held that the "objectively reasonable" standard applies to "conditions of confinement" claims brought by arrestees. *Currie v. Chhabra*, 728 F.3d 626, 629 (7th Cir. 2013) (quoting *Villanova v. Abrams*, 972 F.2d 792, 797 (7th Cir. 1992)).

*Rhodes v. Chapman,* 452 U.S. 337, 346 (1981); s*ee also James v. Milwaukee County*, 956 F.2d 696, 699 (7th Cir. 1992). "Some conditions of confinement may establish an Eighth Amendment violation 'in combination' when each would not do so alone, but only when they have a mutually enforcing effect that produces the deprivation of a single, identifiable human need such as food, warmth, or exercise-for example, a low cell temperature at night combined with a failure to issue blankets." *Wilson,* 501 U.S. at 304.

The conditions described in the complaint support Counts 1 and 2. These conditions include the denial of cleaning supplies, exposure to contaminated food, and a two-year denial of exercise opportunities. Whether considered in isolation or in combination, the conditions satisfy the objective component of Plaintiff's claims. *See, e.g., Delaney v. DeTella*, 256 F.3d 679, 684 (7th Cir. 2001) (six month denial of yard access stated sufficient constitutional deprivation); *Pearson v. Ramos*, 237 F.3d 881, 884-85 (7th Cir. 2001) (ninety day denial of yard privileges may be cognizable under Eighth Amendment); *Turley v. Rednour*, 729 F.3d 645, 652 (7th Cir. 2013) (denial of exercise resulting from unit-wide lockdowns supported claim). *See also Sanders v. Sheahan*, 198 F.3d 626 (7th Cir. 1999) (nutritionally inadequate food resulting in malnutrition supported claim); *Antonelli v. Sheahan*, 81 F.3d 1422, 1432 (7th Cir. 1996) (reversing dismissal of *pro se* prisoner's claim that he received "not just ran[c]id food" but also a "nutritionally deficient" diet); *Johnson v. Pelker*, 891 F.2d 136, 139-40 (7th Cir. 1989) (reversing summary judgment where prisoner was denied cleaning supplies and confined for three days in cell smeared with feces).

But the Court's analysis does not end there. In conditions of confinement cases, the relevant state of mind is deliberate indifference to inmate health or safety; the official must be aware of facts from which the inference could be drawn that a substantial risk of serious harm

exists, and he or she also must draw the inference. *See, e.g., Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *Del Raine v. Williford*, 32 F.3d 1024, 1032 (7th Cir. 1994).

With regard to Count 1, the complaint suggests that Defendants Bridges and Reid were deliberately indifferent to Plaintiff's living conditions. According to the complaint, both of these defendants were directly responsible for maintaining safe and clean conditions at the Jail during this time period, and both ignored Plaintiff's complaints about the conditions (Doc. 1, pp. 8-9). As a result, Plaintiff was deprived of safe food, a clean cell, and adequate exercise opportunities. These allegations support deliberate indifference claims against Defendants Bridges and Reid under Count 1.

With regard to Count 2, Plaintiff alleges that Defendants Justus, Watson, McLaurin, and Trice failed to train and supervise kitchen staff in the proper handling of food and sanitary conditions of the kitchen (Doc. 1, pp. 7-8). "[F]ailure to train claims are usually maintained against municipalities, not against individuals, and, in the Eighth Amendment context, such claims may only be maintained against a municipality." *Brown v. Budz*, 398 F.3d 904, 917 (7th Cir. 2005) (*Sanville v. McCaughtry*, 266 F.3d 724, 739-40 (7th Cir. 2001)). In this context, a "municipality may be directly liable for constitutional violations by its officers when the municipality evinces a deliberate indifference to the rights of the plaintiff by failing to train adequately its officers to prevent a constitutional violation." *Davis v. Carmel Clay Sch.*, 570 Fed. Appx. 602, 607 (7th Cir. 2014) (citing *Jenkins v. Bartlett*, 487 F.3d 482, 492 (7th Cir. 2007)). A repeated pattern or widespread practice of constitutional violations that makes the need for further training plainly obvious can establish deliberate indifference. *Id.*

Although Plaintiff did not name St. Clair County as a Defendant, he did name county

officials in their official capacities. "[A]n official capacity suit is tantamount to a claim against the government entity itself." *Guzman v. Sheahan*, 495 F.3d 852, 859 (7th Cir. 2007); *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 n.55 (1978). The complaint suggests that county officials failed to adequately train or supervise Jail staff with regard to health and sanitation issues. Accordingly, Plaintiff shall be allowed to proceed with his official capacity claims against Defendants Justus, Watson, McLaurin, and Trice at this early stage in litigation. However, the individual capacity claims against these defendants shall be dismissed. *See Brown*, 398 F.3d at 917 (failure-to-train claims against defendants in their individual capacities were properly dismissed).

In summary, Plaintiff shall be allowed to proceed with Count 1 against Defendants Bridges and Reid. He shall be allowed to proceed with Count 2 against Defendants Justus, Watson, McLaurin, and Trice in their official capacities. All other claims shall be dismissed without prejudice from this action.

**Deceased Defendant**

No service shall be ordered on Defendant Justus, who died before the commencement of this action.[6] The Court has authority pursuant to Federal Rule of Civil Procedure 25(a) to substitute the proper party where a claim survives the death of a defendant. *See Walsh v. City of Chicago*, 712 F. Supp. 1303, 1306 (N.D. Ill. 1989) (substitution of deceased defendant with decedent's representative may be appropriate in Section 1983 action); *see also* FED. R. CIV. P. 25(a). In this case, only the official capacity claim in Count 2 survives against Defendant Justus. Under the circumstances, Federal Rule of Civil Procedure 25(d) controls and states, in pertinent

---

[6] The Court takes judicial notice of the fact that Defendant Mearl Justus passed away in December 2012. Michael D. Sorkin, *Longtime St. Clair County Sheriff Mearl Justus Dies,* ST. LOUIS POST–DISPATCH, Dec. 19, 2012, http://www.stltoday.com/news/local/obituaries/longtime–st–clair–county–sheriff–mearl–justus–dies/article_ee14affb–ce4a–54f2–850c–b7b75cd2b11f.html.

part: "An action does not abate when a public officer who is a party in an official capacity dies, resigns, or otherwise ceases to hold office while the action is pending. The officer's successor is automatically substituted as a party." *Id.* The complaint identifies Defendant Watson as Defendant Justus' successor. Because Defendant Watson is already a party to this action, substitution is not necessary. Defendant Justus shall instead be dismissed without prejudice, and the official capacity claim in Count 2 shall proceed against Defendant Watson.

## Disposition

The Clerk is hereby **DIRECTED** to alter the spelling of Mearl "Justice" to reflect the correct spelling, i.e., Mearl "Justus," in the docket sheet in CM/ECF.

**IT IS HEREBY ORDERED** that Defendant **JUSTUS** is **DISMISSED** without prejudice from this action pursuant to Federal Rule of Civil Procedure 25(d).

**IT IS FURTHER ORDERED** that all **INDIVIDUAL CAPACITY** claims against Defendants **McLAURIN** and **TRICE** are hereby **DISMISSED** without prejudice.

**AS TO COUNTS 1** and **2**, the Clerk of Court shall prepare for Defendants **BRIDGES**, **REID, WATSON (official capacity only), McLAURIN (official capacity only),** and **TRICE (official capacity only)**: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the complaint, and this Memorandum and Order to each Defendant's place of employment as identified by Plaintiff. If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that Defendant, and the Court will require that Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

With respect to a Defendant who no longer can be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Plaintiff shall serve upon Defendants (or upon defense counsel once an appearance is entered), a copy of every pleading or other document submitted for consideration by the Court. Plaintiff shall include with the original paper to be filed a certificate stating the date on which a true and correct copy of the document was served on Defendants or counsel. Any paper received by a district judge or magistrate judge that has not been filed with the Clerk or that fails to include a certificate of service will be disregarded by the Court.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to a **United States Magistrate Judge Philip M. Frazier** for further pre-trial proceedings. Further, this entire matter shall be **REFERRED** to a **United States Magistrate Judge Frazier** for disposition, pursuant to Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *if all parties consent to such a referral.*

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under § 1915, Plaintiff will be required to pay the full amount of the costs, regardless of the fact that his application to proceed *in forma pauperis* has been granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is **ADVISED** that at the time application was made under 28 U.S.C. § 1915 for leave to commence this civil action without being required to prepay fees and costs or give security for the same, the applicant and his or her attorney were deemed to have entered into a stipulation that the recovery, if any, secured in the action shall be paid to the Clerk of the Court, who shall pay therefrom all unpaid costs taxed against plaintiff and remit the balance to plaintiff. Local Rule 3.1(c)(1).

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED: March 16, 2015**

s/ STACI M. YANDLE
United States District Judge